**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ELEANOR Z. RABIN | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| DOUGLAS A. MCCLAIN, SR., ARGYLL BIOTECHNOLOGIES, LLC, PADMORE HOLDINGS, LTD., JAMES T. MICELI, DOUGLAS A. MCCLAIN, JR. ARGYLL EQUITIES, LLC, SW ARGYLL INVESTMENTS, LLC, and ARGYLL AVIATION, LLC, | § | Civil Action No. SA-10-CV-981-XR |
| *Defendants*. | § | |

**ORDER**

Before the Court is Plaintiff Eleanor Z. Rabin's motion for default judgment. After due consideration of the relevant law, the Court GRANTS the motion and ENTERS default judgment against Defendants Douglas A. McClain Sr., Douglas A. McClain Jr., James T. Miceli, Argyll Equities, LLC, Argyll Biotechnologies, LLC, Padmore Holdings, LTD., Argyll Aviation, LLC, and SW Argyll Investments, LLC.

**Background**

This matter stems from claims arising out of Defendants' allegedly fraudulent sale of stock. Plaintiff alleges that Defendants Miceli, McClain Sr., and McClain Jr. began defrauding investors through stock sales after working together at an entity known as International Profit Associates

("IPA") in Illinois.[1] Plaintiff alleges that through IPA, McClain Sr. became involved with a public entity known as Nextpath Technologies, and began selling large volumes of stock to investors based on false information for approximately $6,000,000.[2] Plaintiff alleges that after McClain Sr.'s involvement with Nextpath, McClain Sr., McClain Jr., and Miceli left IPA and used money from the sale of Nextpath stock to finance the start of a new entity, FIT Management.[3]

Plaintiff alleges that FIT Management financed the start of an entity known as Argyll Equities, which had the appearance of a legitimate financial/stock lender "but operated more akin to a Ponzi scheme."[4] Plaintiff alleges that Argyll Equities financed the start up of Argyll Biotechnologies, and that Argyll Equities and/or Argyll Biotechnologies financed the start up of Immunosyn.[5] Plaintiff asserts that through those entities, Miceli and McClain Jr. financially control

---

[1]Plaintiff's Third Amended Complaint, ¶ 26. Plaintiff asserts that in January 1999, Miceli, McClain Sr., and McClain Jr entered into a partnership agreement "for the purpose of devising, creating, designing, pursuing, formulating, enacting and engaging in all companies, corporations, partnerships or legal entities which are or have been or will be used by the parties for the purpose of creating any income or tangible item recognized as having value foreign or domestic" with a term of "fifteen years." *Id.* at ¶ 24.

[2]*Id.* at ¶¶ 27-31. Plaintiff alleges that two individuals who were promised unrestricted stock in Nextpath, but only received restricted stock, filed an action against McClain Sr. in the United States District Court for Massachusetts, resulting in a judgment against him for $4,500,000. *Id.* at ¶¶ 28-32. Plaintiff also alleges that Miceli was convicted of felony laundering, forgery, perjury, and theft over $100,000 in the State of Illinois. *Id.* at ¶ 25.

[3]*Id.* at ¶¶ 33-35

[4]*Id.* at ¶ 34-37. Plaintiff asserts that because of numerous civil judgments against Argyll Equities and FIT Management, McClain Sr. did not publically own Argyll Equities, but instead operated the company as a consultant and secret owner. *Id.* at ¶ 35.

[5]*Id.* at ¶ 40. Plaintiff alleges that Argyll Biotechnologies was formed because numerous persons brought civil suits against Argyll Equities, and that as a result Argyll Equities' reputation as a reputable and financially stable company deteriorated. *Id.* at ¶ 39.

Immunosyn.[6]

Plaintiff alleges that Argyll Biotechnologies claimed to own, develop, and promote a drug called SF-1019, and that Immunosyn claimed in its SEC filings and website to have the exclusive rights to sell SF-1019.[7] Plaintiff alleges that McClain Sr., McClain, Jr., and Miceli devised a scheme wherein they would associate and befriend persons in local communities and provide them false information to sell Immunosyn stock in exchange for commission and/or gifted stock.[8]

Plaintiff alleges that McClain Sr. recruited her boyfriend to sell shares of Immunosyn, and that she learned about the drug SF-1019 from him.[9] Plaintiff, who suffers from a neurological disorder, alleges that after learning of the drug, she called McClain Sr. from Florida to ask if it could be used to treat her illness.[10] Plaintiff asserts that McClain Sr. informed her that the drug would help her condition and that he would send her some vials for a doctor to administer.[11] He also allegedly informed her that SF-1019 had FDA approval in Utah.[12] Plaintiff states that during the call she asked

---

[6] Argyll Equities, Argyll Investments, and Argyll Biotechnologies are Texas limited liability companies of which Miceli and McClain Jr. are each 50% owners and officers. *Id.* at ¶ 12.

[7] *Id*. at ¶¶ 41-42. Plaintiff alleges that during at least 2008, Argyll Biotechnologies contracted with Iso-Tex Diagnostics, located in Friendswood, Texas, to manufacture SF-1019 and that it was then distributed and administered to patients through various doctors. *Id.* at ¶ 15b. Plaintiff also alleges that Miceli and McClain Sr. were personally involved in the development of media statements and promotional statements made on their companies' websites concerning SF-1019. *Id.* at ¶ 46.

[8] *Id.* at ¶¶ 56-59

[9] *Id.* at ¶ 64.

[10] *Id.* at ¶ 65.

[11] *Id.* at ¶ 66.

[12] *Id.* at ¶ 66.

if she could purchase some of Immunosyn's stock and McClain Sr. told her that she could.[13] Plaintiff asserts that she understood that McClain Sr. worked for Argyll Biotechnologies and that his family owned the company.[14]

Plaintiff alleges that in December 2006 she telephoned McClain Sr. from Florida and informed him that she intended to sell her condo for $80,000 and that she would like to invest the money in order to obtain enough money to buy another home.[10] She claims that she sought advice from McClain Sr. on investing this money in Immunosyn and he told her that she could buy shares at $1 per share and that Immunosyn was soon going public on the NASDAQ at $15 per share.[11] Plaintiff alleges that McClain Sr. told her that if she sent him the $80,000 he would send her the stock before it went public and that she would "become a millionaire" from this investment.[12] Plaintiff states that she informed McClain Sr. that the $80,000 was all the money she had in the world and that he told her the money was "guaranteed safe."[12]

Plaintiff alleges that during phone calls with McClain Sr. in December 2006 and January 2007, McClain Sr. told Plaintiff that the stock was coming from his family trust.[13] Plaintiff alleges that this information was false and that the stock actually came from another entity known as

---

[13] *Id.* at ¶ 67.

[14] *Id.* at ¶ 67.

[10] *Id.* at ¶ 68.

[11] *Id.* at ¶ 68.

[12] *Id.* at ¶ 70.

[12] *Id.* at ¶ 69.

[13] *Id.* at ¶ 72.

Padmore Holdings, that is partly owned by McClain Sr., McClain Jr., and Miceli.[14] Plaintiff states that in January 2007, she sent $80,000 to the bank account of McClain Sr.'s mother.[14] Plaintiff alleges that McClain Sr. received Plaintiff's $80,000 prior to Immunosyn going public, but that he did not send her the stock certificates until January or February 2008.[15] Plaintiff alleges that McClain Sr. told her that he did not send her the shares right away because he did not want her to sell them on the open market.[16] By the time Plaintiff received the stock, Immunosyn had gone public at $15 per share but had significantly decreased in value.[17] Upon receipt of the stock, Plaintiff sold some shares immediately because she was desperate for money.[18] However, Plaintiff alleges she retained the majority of her shares because McClain Sr. told her not to sell her stock because it would go back to $15 per share after SF-1019 received nation-wide approval by the FDA and was approved for use in Malaysia.[16] Plaintiff held on to the stock but it continued to decline in value.[17] Plaintiff finally sold her shares on the OTC for $0.12 per share.[16] Plaintiff asserts that the stock was

---

[14] *Id.* at ¶ 73. Plaintiff alleges that Padmore Holdings is a British Virgin Islands entity with agents located in San Antonio and Houston, Texas. *Id.* at ¶¶ 16, 17. Plaintiff asserts that Miceli is 45% owner, McClain Jr. is 45% owner, and that McClain Sr. is 10% owner. *Id.*

[14] *Id.* at ¶ 71.

[15] *Id.* at ¶ 74.

[16] *Id.* at ¶ 75.

[17] *Id.* at ¶¶ 76-77.

[18] *Id.* at ¶ 77.

[16] *Id.* at ¶ 77.

[17] *Id.* at ¶ 79.

[16] *Id.* at ¶ 79.

never listed on the NASDAQ and never received FDA approval anywhere.[18] She purports to have lost $65,000.[19]

Plaintiff filed suit in this Court alleging that the Defendants, personally, through agents, and through other entities that they control, engaged in false and misleading promotion of Immunosyn stock, for financial gain, to the detriment of others from April 2007 through the present totaling more than $14,000,000.[20] Plaintiff further alleges that McClain Sr., McClain Jr., and Miceli control the corporate Defendants and have purposefully stripped some of them of assets, regularly transfered funds between entities, failed to segregate personal assets from business assets, and failed to maintain corporate formalities.

**Procedural History**

On December 7, 2010, Rabin filed a complaint against Douglas McClain Sr, Argyll Biotechnologies, and James Miceli for violation of the Securities Exchange Act, fraud and fraud in the inducement, breach of contract, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), conspiracy to violate RICO, and civil conspiracy. (Docket No. 1). Plaintiff filed an amended complaint on February 24, 2011, adding Padmore Holdings as a defendant. (Docket No. 3). On May 3, 2011, the Defendants filed answers. (Docket Nos. 8-11). On June 14, 2011, Plaintiff filed a Second Amended Complaint adding Douglas McClain Jr. as a defendant. (Docket No. 30). The defendants filed timely answers to Plaintiff's Second Amended Complaint. (Docket Nos. 42-46).

---

[18]*Id.* at ¶ 79.

[19]*Id.* at ¶ 79.

[20]*Id.* at ¶¶ 43, 45. Plaintiff alleges that the scheme is similar to McClain Sr.'s false and misleading promotion of Nextpath stock. *Id.*

On August 23, 2011, Defendants' counsel filed a motion to withdraw as counsel of record, alleging that a personality conflict had arisen and Defendants had not fulfilled their financial obligations. (Docket No. 49). The Court granted the motion on August 25, 2011, and ordered the corporate Defendants to obtain legal counsel and cause them to enter an appearance within thirty days. (Docket No. 53). The corporate Defendants did not cause an attorney to enter an appearance.

On October 6, 2011, Plaintiff filed a Third Amended Complaint adding Argyll Equities, Argyll Investment, and Argyll Aviation as defendants. (Docket No. 58). The summonses were returned executed on November 15, 2011, but to this date these Defendants have not filed answers. (Docket Nos. 62-64). On November 15, 2011, Plaintiff filed a motion for default judgment. (Docket No. 65). On January 25, 2011, the Court issued an order directing the Defendants to advise this Court of the status of the case and to show cause for why a default judgment should not be entered against them. (Docket No. 69). On February 2, 2012, McClain Jr. filed a motion requesting an additional thirty days to obtain legal counsel, which the court granted. (Docket Nos. 71, 74). To this date, none of the Defendants have caused an attorney to enter an appearance on their behalf, nor have they apprised the Court of the status of the case.

**Legal Standard**

Pursuant to FED. R. CIV. P. 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."[21] However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. The Court examines each in turn.

**Analysis**

---

[21] FED. R. CIV. P. 55(a).

**A. Jurisdiction**

When a party is seeking entry of default under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[22] Federal courts have subject matter jurisdiction over any civil actions that involve a question of federal law, or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.[23] For purposes of determining diversity of citizenship, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."[24]

In this case, the original action was brought in federal court by the Plaintiff pursuant to the Securities Exchange Act of 1934, 15 U.S.C. §78t, and the RICO statute 18 U.S.C. § 1964 et. seq.[25] Thus, Plaintiff asserts claims involving federal questions against all named Defendants in the case.[26] Though not necessary, the parties also are diverse,[27] and the amount in controversy claimed by

---

[22] *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[23] 28 U.S.C. §§ 1331, 1332.

[24] 28 U.S.C. § 1332(c)(1).

[25] Third Amended Complaint, ¶11. *See* 28 U.S.C. §§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[26] Third Amended Complaint, ¶11. Plaintiff also alleges common law causes of action against Defendants. A district court has supplemental jurisdiction over "claims that are so related to claims in the actions within...original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

[27] *See* Third Amended Complaint, ¶¶ 1-10 (stating where parties to the suit reside).

Plaintiff Eleanor Z. Rabin exceeds $75,000.[28] Therefore, this Court has subject matter jurisdiction over the cause of action brought by Plaintiff.

With regard to personal jurisdiction over nonresident defendants, a federal court "may assert jurisdiction if (1) the state's long-arm statute applies...and (2) if due process is satisfied."[29] In Texas, the long-arm statute permits the exercise of jurisdiction over a nonresident to the full extent compatible with federal mandates of due process.[30] Thus, personal jurisdiction is proper when two requirements are met.

"First, the nonresident defendant must have 'purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state.'"[31] To establish "minimum contacts," it is sufficient to show that the defendant has contacts giving rise to either specific or general personal jurisdiction.[32] "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."[33] On the other hand, general jurisdiction is proper "even if the...contacts with the forum

---

[28] *Id.* at ¶¶ 79, 85, 92, 98, 110, 117, 125, 128 (requesting lost profits of over $75,000); *see* 28 U.S.C. § 1332 (providing the diversity and amount in controversy requisites for a district court to have original jurisdiction over a civil action in the absence of a federal question).

[29] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)).

[30] *Id.* (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

[31] *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 323 (5th Cir. 1996) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

[32] *Id.* (quoting *Wilson*, 20 F.3d at 647).

[33] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Bullion v. Gillespie*, 895 F.2d 213,216 (5th

state are not directly related to the cause of action, [as long as] the defendant's contact with the forum state are both 'continuous and systematic.'"[34]

The second requirement is that "the exercise of jurisdiction over the nonresident defendant must not 'offend traditional notions of fair play and substantial justice.'"[35] In making such a determination of "fairness," courts "consider (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution to controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies."[36]

As an initial matter, Defendants McClain Sr., Argyll Biotechnologies, Padmore Holdings, McClain Jr. and Miceli have waived any objection to personal jurisdiction by making an answer to Plaintiff's complaints.[37] However, as noted below, this Court also has jurisdiction over them based on minimum contacts.

First, it is clear that this Court has personal jurisdiction over Defendant Douglas A. McClain, Sr. because he is a resident of Texas. In addition, as Texas limited liability companies, it also is clear that this Court has personal jurisdiction over Defendants Argyll Equities LLC, Argyll

---

Cir. 1990)).

[34]*Id.* (citing *Helicopteros*, 466 U.S. at 414 n.9).

[35]*Felch*, 92 F.3d at 323 (quoting *Wilson*, 20 F.3d at 647).

[36]*Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

[37]*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).

Biotechnologies LLC, and SW Argyll Investments, LLC.[38]

Plaintiff then argues that the remaining nonresident Defendants have sufficient contacts with Texas for the Court to exercise personal jurisdiction over them. While Argyll Aviation, LLC is an Oregon company with its principal place of business in California, it is alleged to be the alter ego of Douglas A. McClain, Sr. who is a resident of Texas.[39] "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."[40]

As to Padmore Holdings, Plaintiff alleges that, as part of the same fraudulent scheme perpetrated upon the Plaintiff, shares of Immunosyn stock were gifted and sold through Padmore Holdings to numerous Texas residents.[41] Plaintiff further claims that this was done to avoid taxes and trading disclosures.[42] Plaintiff also alleges that Padmore has a registered agent in the state of Texas[43] and employs an additional agent in Texas, who is a director of Padmore and likely the

[38]Third Amended Complaint, ¶¶ 3,8-9.

[39]*Id. at* ¶¶ 5,10,54.

[40]*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d at 653.

[41]*Id.* at ¶ 18.

[42]*Id.*

[43]Per its SEC filings, J. Ken Nunley, Esq. of Texas, is an agent of Padmore Holdings, Ltd. Third Amended Complaint, ¶16. *See Perkins v. Benguet Consul. Mining Co.*, 342 U.S. 437, 444 (1952) ("If an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on behalf,...there is no unfairness in subjecting that corporation to the jurisdiction of the

accountant as well.[44] Furthermore, the owners of the company allegedly have had substantial business contacts with the State in the form of sales and gifts of stock owned by the company.[45] Finally, Plaintiff alleges that the Immunyson stock that she purchased came held by Padmore.[46] Thus, it is likely that these contacts with the forum are related to the scheme that defrauded Plaintiff, rendering the exercise of specific jurisdiction appropriate.[47]

However, Padmore's continuous and systematic contacts with Texas are also sufficient to establish general jurisdiction – the company has both owners and directors residing in the State, it maintains a Texas office, it employs Texas residents, and stock was transferred on its behalf within the forum to Texas residents.[48] These are the types of "continuous and systematic corporate activities...[that] are enough to make it fair and reasonable to subject [the company] to proceedings in personam in [the] [S]tate."[49] Moreover, because of Padmore's continuing presence in the State, exercising jurisdiction over it does not offend "traditional notions of fair play and substantial

---

courts of that state....").

[44]Third Amended Complaint, ¶16.

[45]*Id.* at ¶18.

[46]*Id.* at ¶ 73.

[47]*See Wilson*, 20 F.3d at 647 (clarifying when a nonresident defendant is subject to the specific jurisdiction of a court).

[48]*See Perkins*, 642 U.S. at 445 (finding that the presence of an agent in the state, coupled with other corporate activities such as directors' meetings, business correspondence, stock transfers, payments of salaries, and purchases or property constituted sufficient contracts with the forum to exercise personal jurisdiction over a nonresident defendant).

[49]*Id.*

justice."[50] The State also has an interest in protecting its residents, some of whom were harmed by Padmore's conduct in the State.[51]

With respect to the two nonresident individuals named as Defendants, James T. Miceli and Douglas A. McClain, Jr., Plaintiff maintains that the Defendants' contacts with the forum are sufficient to establish specific jurisdiction and general jurisdiction. According to Plaintiff, this Court has general jurisdiction over Defendants due to their continuous and systematic contacts with Texas, consisting of both business and personal dealings. For a district court to properly exercise general jurisdiction, the defendant's contacts with the forum must "occur with such frequency that the contacts in general are 'continuous and systematic.'"[52] Though there is no requirement that the contacts be directly related to the cause of action, it is nonetheless necessary that the unrelated contacts be "substantial."[53] The court can make this determination by "evaluating [the] contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."[54]

The facts as supplied by Plaintiff indicate that Defendants' contacts with the State are very

---

[50]*See Wilson*, 20 F.3d at 647 (providing the second requirement for proper personal jurisdiction over a nonresident defendant).

[51]*See Asahi Metal Indus. Co.*, 480 U.S. at 113 (considering the interest of the forum state in making a determination of the fairness of exercising personal jurisdiction over a nonresident defendant).

[52]*Access Telecom, Inc. v. MCI Telecomms. Corp*., 197 F.3d 694, 717 (5th Cir. 1999) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986)).

[53]*Wilson*, 20 F.3d at 650 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984)).

[54]*Access Telecom, Inc. v. MCI Telecomms. Corp*., 197 F.3d 694, 717 (5th Cir. 1999) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 569 (2d Cir. 1996).

similar to those of the nonresident defendant in *Holt Oil & Gas Corp. v. Harvey*,[55] in which the Fifth Circuit held that an examination of the contacts "*in toto*" revealed "the kind of continuous and systematic contacts required to satisfy due process."[56] To begin with Defendants have conducted a great deal of business in Texas.[57] Defendants are the sole officers and owners of Argyll Equities, LLC, a Texas limited liability company.[58] Through Argyll Equities, Defendants entered into loan transactions with Texas residents, who subsequently sued Argyll Equities and Defendant Miceli for fraud committed within the State.[59] A Texas court ultimately entered judgment against the entity and both Defendants.[60]

Furthermore, Defendants also were officers and owners of Argyll Biotechnologies, LLC, through which they manufactured and distributed a drug within the State of Texas.[61] As officers of the company, Defendants employed at least two Texas residents: Defendant McClain, Sr. and Dr.

---

[55] 801 F.2d 773 (5th Cir. 1986).

[56] *Id.* at 779.

[57] Third Amended Complaint, ¶¶ 12-23; *see Holt Oil & Gas Corp*., 801 F.2d at 779 (noting that defendant had "transacted a great deal of business in Texas").

[58] *Id*. at ¶¶ 8, 14; *see Holt Oil & Gas Corp*., 801 F.2d at 779 (acknowledging that nonresident defendant was the sole shareholder of a company conducting business in Texas).

[59] *Id.* at ¶ 14.

[60] *Id.* at ¶ 22. In *Holt Oil & Gas Corp*., the nonresident defendant was the sole shareholder of a company that drilled several oil wells in Texas, and the company was also involved in litigation in Texas. 801 F.2d at 779.

[61] *Id.* at ¶ 15; *see Holt Oil & Gas Corp*., 801 F.2d at 779 (commenting on nonresident defendant's additional business dealings with a Texas record company, of which defendant served as a director and had invested money).

Erickson.[62] Moreover, Defendants retained the services of an attorney, J. Ken Nunley, to conduct corporate legal matters, as well as the services of an accountant, Lynn Booker, both of whom are Texas residents.[63] Under Texas law, "a nonresident does business in this state if the nonresident . . . recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this State."[64]

In addition to Defendants' business related contacts, the Defendants also have benefitted personally from the transfer of property to Texas.[65] Plaintiff claims that Miceli and McClain, Jr. transferred numerous shares of stock owned by Padmore Holdings, Ltd. to residents of the State.[66] In doing so, Defendants personally received money from the sale of said stock.[67] Therefore, viewing the facts *in toto*, it is clear that Defendants' personal and business contacts with the State of Texas "constitute the kind of continuous and systematic contacts required to satisfy due process."[68]

---

[62] *Id.* at ¶ 15.

[63] *Id.* at ¶ 15-16.

[64] TEX. CIV. PRAC. & REM. CODE ANN. §17.042 (2010); *see Kervin v. Red River Ski Area, Inc.*, 711 F. Supp. 1383, 1387 (E.D. Tex. 1989) (considering non-resident defendant's employment of a Texas resident as factor in determining that court had general jurisdiction over defendant (citing TEX. CIV. PRAC. & REM. CODE ANN. §17.042 (1986))).

[65] Third Amended Complaint, ¶ 19.

[66] *Id.* at ¶ 18; *see Perkins* 342 U.S. at 445-46 (noting that stock transfers are an activity to be considered in analyzing continuous ans systematic contacts)).

[67] *Id.* at ¶ 19; *see generally Advantage Investors Mortgage Corp. v. Robertson*, 2002 WL 1000924, at *6 (N.D. Tex. May 14, 2002) (finding significant that nonresident Defendant profited from brokering deals for Texas residents)).

[68] *Holt Oil & Gas Corp.*, 801 F.2d at 779; *see Perkins*, 342 U.S. 437, 445-46 (1952) (acknowledging that "directors' meetings, business correspondence, banking, stock transfers, [and] payments of salaries" are the types of activities that "make it fair and reasonable to subject [a non-resident defendant] to proceedings in personam in that state"); *Langton v. Cbeyond*

Given the Defendants' history of contacts with and presence in the State, the exercise of jurisdiction over them would not impose an unfair burden.[69] Many of the individuals harmed by Defendants' actions were Texas residents, and the State has an interest in providing an efficient resolution to the controversy.[70] Thus, the adjudication of Plaintiffs' claims against Defendants Miceli and McClain, Jr. in a Texas court would not "offend traditional notions of fair play and substantial justice."[71] Because this Court finds that it has general jurisdiction over Miceli and McClain, Jr., it is not necessary to consider specific jurisdiction.

**B. Claims Upon Which Relief May be Granted**

When a defendant fails to respond or otherwise defend, his default is considered an admission of the plaintiff's well-pleaded allegations of fact related to liability.[72] While such allegations are presumed to be true, "a defendant's default does not in itself warrant the court in entering a default judgment. [Rather, t]here must be a sufficient basis in the pleadings for the judgment entered."[73] In

---

*Comm., L.L.C.*, 282 F.Supp. 2d 504, 509 (E.D. Tex. 2003) ("Conducting business in a forum regularly directing salespersons into a forum, and soliciting business in a forum are continuous and systematic activities that support general jurisdiction." (citing *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (10th Cir. 1999))).

[69] *See Bullion*, 895 F.2d at 216 n.5 (5th Cir. 1990) (considering the burden upon the nonresident defendant for purposes of traditional notions of fair play and substantial justice (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987))).

[70] *See id*. (Examining the interests of the forum state and the interstate judicial system's interest in obtaining the most efficient resolution to a controversy).

[71] *Id.*

[72] *Jackson v. FIE Corp.*, 302 F.2d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[73] *Nishimatsu Constr. Co., Ltd. v. Houston Natl'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

other words, the court must determine whether the well-pleaded facts state a claim upon which relief may be granted.[74] In sum, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action[,] and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."[75]

Due to Defendants' failure to respond to the claims against them, the facts pled by Plaintiff are taken as true, but Plaintiff's complaint must nonetheless contain substantive causes of action, as well as a sufficient basis for the relief sought.[76] First, Plaintiff alleges claims under the Securities Exchange Act of 1934 against Defendants Padmore Holdings, LTD. and Argyll Biotechnologies and seeks out-of-pocket losses, which are the appropriate measure of damages for such a claims.[77]

In addition, Plaintiff asserts claims of common law fraud, fraud in the inducement, and breach of contract against McClain Sr. and Argyll Biotechnologies. Accordingly, Plaintiff Foster

---

[74]"On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206 (citing *Ohio Central R.R. Co. v. Central Trust Co. of NY*, 114 U.S. 104 (1885)). Furthermore, it is a defense to a claim for relief that the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *see also McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355, 2001 WL 422375, at *1-2 (5th Cir. Mar. 28, 2001) (affirming denial of plaintiff's request for default judgment for failure to state a claim upon which relief could be granted); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (holding that default judgment was improper on claims that were barred or subject to dismissal under Rule 12(b)(6)).

[75]*Tyco Fire & Sec, LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (applying Texas law).

[76]*Id.* at 863.

[77]*See James v. Nico Energy Corp.*, 838 F.2d 1365, 1371 (5th Cir. 1988) (noting that the general measure of damages for a defrauded buyer under Rule 10b-5 is out-of-pocket damages).

seeks recovery of lost profits, which are available under Texas law in breach of contract and fraud actions.[78]

Plaintiff also brings civil conspiracy claims against Padmore Holdings, SW Argyll Investments, Argyll Investments, Argyll Equities and Argyll Biotechnologies. "[A] co-conspirator is bound by the overt acts of other conspirators taken in furtherance of the conspiracy, whether or not said co-conspirator was a member of the conspiracy at the time..."[79] Plaintiff seeks all of the aforementioned damages from Defendants Padmore Holdings, SW Argyll Investments, Argyll Investments, Argyll Equities and Argyll Biotechnologies collectively. Therefore, Plaintiff has alleged substantive causes of action against the Defendants, upon which relief can be granted.

Plaintiff further brings a claim for RICO violations against Miceli, McClain Sr., and McClain Jr., and seeks compensatory damages, lost profits, treble damages, interest, costs and attorney fees.[80] Because this Court concludes that Plaintiff is entitled to lost profits under her common law claims, the Court need not address this cause of action.

As to Defendant Argyll Aviation, although Plaintiff has not pled a specific statute, it appears she is asserting a claim under the Uniform Fraudulent Transfer Act for the alleged wrongful transfer

---

[78] *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998) (acknowledging that in cases of common law fraud, "lost profits on the bargain may be recovered if such damages are proved with reasonable certainty"); *S.W. Battery Corp. v. Owen,* 115 S.W.2d 1097, 1098-99 (1938) (finding that recovery of lost profits in a breach of contract action is permissible when the "amount of loss [is] shown by competent evidence with reasonable certainty").

[79] *In re Enron Corp. Sec., Derivatives & ERISA Litig.*, 623 F. Supp. 2d 798, 810 (quoting *U.S. v. Thomas*, 686 F. Supp. 1078, 1088 (M.D. Pa. 1988)).

[80] Third Amended Complaint, ¶ 110.

of an airplane.[81] The statute provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor...if the debtor made the transfer or incurred the obligation (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[82]

In support of this claim, Plaintiff alleges that Defendant Argyll Aviation received an airplane from Argyll Equities, LLC and/or James T. Miceli, Douglas McClain, Jr. and/or Douglas McClain, Sr., valued at over $75,000, without receiving a reasonably equivalent value. Based on the uncontested facts, the Court concludes that a fraudulent transfer occurred.

**C. Damages**

When a court awards damages to a plaintiff in a default judgement case, the amount "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[83]

Plaintiff seeks lost profits in the amount of $1,120,000 under her Federal and state law claims. Plaintiff claims that Immunosyn stock's opening price was $15 per share, she purchased 80,000 shares, and Plaintiff was unable to sell for this amount due to Defendant's failure to deliver the shares to her.[84] Had Plaintiff been delivered her 80,000 shares and sold them at $15 per share, she would have made $1,120,000 in profit. However, Plaintiff alleges that she ultimately sold her

---

[81] Third Amended Complaint, ¶¶ 126-28.

[82] TEX. BUS. & COM. CODE ANN. § 24.005(a).

[83] FED. R. CIV. P. 54(c).

[84] Third Amended Complaint, ¶ 68.

shares for a total of $15,000. Thus, Plaintiff's award should be reduced by $15,000 and she is entitled to $1,185,000 in lost profits.

**Conclusion**

Due to all Defendants failure to respond to the Plaintiff's Third Amended Complaint, the Court hereby GRANTS Plaintiff ELEANOR Z. RABIN motion for entry of default judgment against Defendants DOUGLAS A. MCCLAIN, SR., ARGYLL EQUITIES, LLC, ARGYLL BIOTECHNOLOGIES, LLC, PADMORE HOLDINGS, LTD., JAMES T. MICELI, DOUGLAS A. MCCLAIN JR., ARGYLL AVIATION, LLC, AND SW ARGYLL INVESTMENTS, LLC. Plaintiff ELEANOR Z. RABIN is entitled to damages in the total amount of $1,185,000. If Plaintiff wishes to pursue costs and attorney fees, Plaintiff shall file a Bill of Costs and an application for attorney fees in the manner provided under the Local Rules within fourteen days of the issuance of a final judgment. Because the Court finds that Defendants are in default, the Court waives the requirement under Local Rule 7 that Plaintiffs confer with Defendants prior to submitting the application.

It is so ORDERED.

SIGNED this 25th day of April, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE